57 So.2d 742

Succession of HARRISON.

No. 39896.

Feb. 18, 1952.

George E. Konrad, New Orleans, for defendant-appellant.

Dart, Guidry & Price, Cyrus C. Guidry, and Louis W. McFaul, Jr., New Orleans, for petitioners for injunction.

LE BLANC, Justice.

This is a proceeding in which an injunction is sought to prevent the consummation of a private sale of certain succession property, the said sale having been provoked by the Public Administrator in and for the Parish of Orleans under the provisions of Act 290 of 1938, LSA–R.S. 9:1451–1454.

The plaintiffs in the suit are Mrs. Morva Harrison Lehrmann, Miss Rose Harrison and Mrs. Reta Wanda Harrison Ory, children of Charles Harrison who was the son of Edward Harrison. It is in the Succession of Edward Harrison that the property involved was sought to be sold.

Charles Harrison died on December 9, 1947. The property in question was the separate property of his father, but, although the latter's succession was opened by his widow by third marriage as testamentary executrix under his last will and testament, on March 24, 1916, all that was ever done in that proceeding was to have her qualify as executrix, in which capacity she seems to have continued until her death on March 14, 1947. No judgment was ever rendered recognizing the naked ownership and placing anyone in possession of the property belonging to the estate of Edward Harrison.

On March 25, 1947 the Public Administrator in and for the Parish of Orleans petitioned the Civil District Court of that Parish for letters of dative testamentary executorship, alleging that the whereabouts of Edward Harrison's only son, Charles Harrison, were unknown and that the succession had become vacant.

Whilst it appears that the Public Administrator asked the court to appoint an attorney-at-law to represent absent heirs and an attorney was appointed, no showing is made that he ever tried to find out if any heirs existed. As a matter of fact no serious attempt seems ever to have been made to locate any heir although it is shown that Edward Harrison's son, Charles, was then living in New Orleans and, according to a certificate of the Bureau of Vital Records, Health Department, died at Baptist Hospital in that city on December 9, 1947 several months after the death of his father's widow and after the Public Administrator represented to the court that his father's succession was vacant.

On June 14, 1948, the Public Administrator applied to the court for an order to sell the property which had been appraised at $3,000 for the sum of $2,000 at private sale under the terms and condi-

tions of Act 290 of 1938, LSA–R.S. 9:1451–1454, an offer to purchase same for that amount having been made by Norman F. deReyna, one of the defendants in injunction.

The petition for sale, the order of court and the advertisement all described the property as consisting of two lots of ground each measuring 30 feet on Dufossat Street by a depth of 110 feet between parallel lines, whereas, correctly described the said lots each have a front of 30 feet on Annunciation Street by a depth of 110 feet on Dufossat Street between equal and parallel lines.

After advertisement for the required period of time under the statute, no opposition having been filed thereto, the court granted an order on August 4, 1949, approving and homologating the application and ordered the sale to be made. as prayed for. The sale itself was never consummated however as the Lawyers Title Insurance Corporation would not approve title to the property in its present form because of its erroneous description in the application for the order to have it sold and in the advertisement.

The present proceeding was instituted by plaintiffs on April 22, 1949. After alleging themselves to be the sole and only heirs of their deceased father, Charles Harrison, recognized as such and placed in possession of all his rights, title and interest in the property involved, they set out all the facts herein recited regarding the incorrect de-

scription of the property under which the order and advertisement for its sale was given, and allege also that the property was sought to be sold to pay the debts incurred by the administration under the Public Administrator. They aver further that the property has a true value of $3,000 and that they will be irreparably injured should the proposed sale by the Public Administrator at $2,000 be consummated. In connection with this allegation plaintiffs annex to their petition an offer by one of them to purchase the property for the sum of $3,000 cash.

The demand for injunction is therefore based on three grounds: (1) Error in the description of the property in the advertisement required by LSA-R.S. 9:1451–1454; (2) the succession owed no debts and plaintiffs were offering to pay the costs of administration; (3) the inadequacy of the price.

On the representations so made to him, supported by oaths of one of the petitioners, the district judge granted a temporary restraining order and issued a rule nisi to the Public Administrator and to Norman F. deReyna to show cause on April 29, 1949, why a preliminary injunction should not issue against them enjoining and restraining them from consummating the sale sought to be had under the proceedings theretofore instituted and conducted.

On the day the rule was made returnable defendants filed exceptions of no cause or right of action, a plea of prescription of 30 years under the provisions of Article

3548 and 1030 of the Revised Civil Code and an answer to the merits which in effect amounted to a general denial.

After hearing the evidence, the trial judge granted the preliminary injunction on June 20, 1949, which was made permanent on July 26, 1949. From this judgment, defendants in injunction have appealed.

The main point of this case, as we see it, is whether the order of the trial judge that the sale should be made, had the effect of cutting off all rights of the heirs to oppose the proposed sale, where the sale had not been consummated over a period of nine months after the date of this order. In other words, did the court have a right to revoke its authorization to sell the property at private sale before the sale became a fait accompli? There has not been too much jurisprudence interpreting Act 290 of 1938 and this particular point has never been passed upon.

In the case of receiverships, it has been held that the trial judge has a right to revoke, ex proprio motu, his authorization for a sale where he believed the order of sale was improvidently granted. See Fitzner v. Noullet, 114 La. 400, 38 So. 398. In the present case the sale had not been consumated evidently because of the information received by the prospective purchaser in response to his application to Lawyers Title Insurance Corporation for a policy of title insurance that certain curative work, including the correction of the erroneous description would have to be done before title could be approved. During the trial of this cause, deReyna testified that he would not take title unless it was cleared. It is true that later on he did, through a stipulation of counsel, state that he was prepared to accept the title as it stood. However, at the time of the filing of this suit, he had not accepted the title nor had he offered the price. Had the sale been consummated as they were in the cases relied on by counsel for defendants, we would entertain but little doubt of their applicability as authority in precluding the heirs from contesting the order of sale in this case. Under the facts here presented, however, we believe that the trial judge had the right, at the stage he did, to revoke the previous authorization of sale.

For the reasons assigned the judgment appealed from is affirmed.